JAMES D. BOYLE, ESQ. (NBN 08384)
jboyle@nevadafirm.com
JESSICA M. LUJAN (NBN 14913)
jlujan@nevadafirm.com
HOLLEY DRIGGS
300 South Fourth Street, Suite 1600
Las Vegas, Nevada 89101
Telephone: 702/791-0308

Brian N. Platt (*pro hac vice*)
bplatt@wnlaw.com
Collin D. Hansen (*pro hac vice*)
chansen@wnlaw.com
**WORKMAN NYDEGGER**
60 East South Temple Suite 1000
Salt Lake City, UT 84111
Telephone: (801) 533-9800
Facsimile: (801) 328-1707

*Attorneys for Plaintiff Axcess Global Sciences, LLC*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| Axcess Global Sciences, LLC, <br><br> Plaintiff <br><br> v. <br><br> Revolution Laboratories LLC *dba* Revlabs, Rev Labs Distribution LLC, and Rev Labs Management Inc., <br><br> Defendants | Case No.: 2:23-cv-01169-JAD-MDC <br><br> [PROPOSED] **ORDER GRANTING PLAINTIFF'S MOTION FOR PARTIAL DEFAULT JUDGMENT AND POST-JUDGMENT DISCOVERY** <br><br> (ECF Nos. 18, 19) |

Axcess Global Sciences, LLC ("Plaintiff") moves for partial default judgment as to liability and for post-judgment discovery as to damages against Revolution Laboratories, LLC *dba* RevLabs, Rev Labs Distribution LLC, and Rev Labs Management Inc. (collectively, "Defendants").[1] Defendants failed to appear in this case, and default was

---

[1] (ECF Nos. 18, 19) (Motions for partial default judgment and post-judgment discovery).

entered against them.[2] After reviewing Plaintiff's motions, the court concludes that each of the default-judgment factors in *Eitel v. McCool*[3] have been met and the court grants Plaintiff's motions for partial default judgment and for post-judgment discovery as to damages.

## BACKGROUND

Plaintiff filed this action[4] for false advertising under Section 43(a) of the Lanham Act[5] and state deceptive trade practices under the Nevada Deceptive Trade Practices Act.[6] Plaintiff is the owner of several U.S. Patents[7] which include claims for unique formulations of the health supplement Beta-Hyrdoxybutyrate ("BHB"). Defendants sell a line of products which purportedly contain a substance called "raspberry ketones."[8] Defendants promote raspberry ketones as having broad health benefits including weight loss, burning fat, improving sleep, and more.[9] Plaintiffs' complaint further cites to several academic articles explaining that raspberry ketones have no health benefits and can even be harmful.[10] Plaintiffs allege that Defendants' false health claims misrepresent the nature, characteristics, and qualities of Defendants' products and of raspberry ketone ingredients.[11] Plaintiffs allege further that these misrepresentations cause harm by lowering the public perception of Plaintiff's legitimate ketone products, weakening the goodwill associated with its brand, and diverting sales away from Plaintiff's ketone products.[12]

---

[2] (ECF No. 16) (Clerk's entry of default).
[3] 782 F.2d 1470 (9th Cir. 1986).
[4] (ECF No. 1) (Complaint).
[5] 15 U.S.C. § 1125(a)(1)(B)
[6] Nev. Rev. Stat. § 598.0915.
[7] Including U.S. Pat. Nos. 11,241,403 and 11,020,362.
[8] (ECF No. 1) at ¶ 2.
[9] *Id.* at ¶¶ 3, 18.
[10] *Id.* at ¶¶ 15-17.
[11] *Id.* at ¶ 5.
[12] *Id.* at ¶ 20.

1    Plaintiff filed its complaint on July 25, 2023[13], and this Court issued summons to each of the Defendants on the same day.[14] Subsequently, Plaintiff served each of the Defendants on July 26, 2023.[15] Pursuant to Fed. R. Civ. P. 12(a), the Defendants were required to respond to the Complaint by August 16, 2023. However, the Defendants failed to appear or otherwise respond to the Complaint and default was entered against them on October 17, 2023.[16] Plaintiff now moves for default judgment against each of the Defendants pursuant to Fed. R. Civ. P. 55(b) and for leave to conduct damages discovery.[17]

## LEGAL STANDARD

Rule 55 of the Federal Rules of Civil Procedure governs default proceedings. "The general rule of law is that upon default the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true."[18] Pursuant to this standard, "[t]he Ninth Circuit has implicitly endorsed the practice of entering partial default judgment" as to liability, while deferring the issue of damages until after damages discovery.[19] Accordingly, it is appropriate to grant partial default judgment and the requested discovery.

## DISCUSSION

**A.    Partial default judgment**

Obtaining a default judgment is a two-step process.[20] First, "[w]hen a party against

---

[13] *Id.*

[14] (ECF Nos. 4, 4-1, 4-2).

[15] (ECF Nos. 10, 11, 12).

[16] (ECF No. 16).

[17] (ECF No. 18, 19).

[18] *Garamendi v. Henin*, 683 F.3d 1069, 1080 (9th Cir. 2012).

[19] *Paramount Pictures Corp. v. Does*, No. 2:21-CV-09317-MCS-SK, 2022 WL 2189633, at *2 (C.D. Cal. Apr. 20, 2022) (granting default judgment as to liability for copyright infringement and also granting leave to conduct damages discovery); *see also Dreith v. Nu Image, Inc.*, 648 F.3d 779, 785–86, 790 (9th Cir. 2011) (reviewing with approval district court's entry of partial default judgment "with respect only to liability" and deferral of the issue of damages until after damages discovery); *see also Howard v. Polley*, No. 2:15-CV-01458-APG-VCF, 2017 WL 481456, at *1 (D. Nev. Feb. 6, 2017) (granting partial default judgment "as to liability" only, but deferring damages).

[20] *See* Fed. R. Civ. P. 55(a)-(b).

whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default."[21] After the clerk enters default, a party may seek default judgment.[22]

While reviewing a motion for default judgment, the Court may consider "the pleadings, declarations, exhibits, and memoranda filed by the parties" and may also require a "hearing on the merits."[23]

Courts in this Circuit consider the *Eitel* factors in determining whether to grant default judgment.[24] These factors are: "(1) the possibility of prejudice to plaintiff, (2) the merits of the claims, (3) the sufficiency of the complaint, (4) the amount of money at stake, (5) the possibility of a dispute concerning material facts, (6) whether default was due to excusable neglect, and (7) the policy favoring a decision on the merits."[25] The Court must also confirm that it has "jurisdiction over both the subject matter and the parties."[26]

### 1. Jurisdiction over the subject matter and the parties

"Federal courts are courts of limited jurisdiction."[27] The burden of establishing that a federal court has jurisdiction over the action "rests upon the party asserting jurisdiction."[28] Under 29 U.S.C. § 1331, "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." The Court finds that Plaintiff has established that this Court has subject matter

---

[21] *Id.*

[22] *Id.*

[23] *See Comm. Futures Trading Comm'n v. Saffron*, No. 2:19-CV-01697-JAD-DJA, 2021 WL 1187021, at *1 (D. Nev. Mar. 29, 2021).

[24] *See Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986); *see also Liberty Ins. Underwriters Inc. v. Scudier*, 53 F. Supp. 3d 1308, 1317 (D. Nev. 2013) (prescribing the *Eitel* factors for determining whether to grant default judgment).

[25] *Liberty Ins.*, 53 F. Supp. 3d at 1317.

[26] *In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999).

[27] *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).

[28] *Hunter v. Philip Morris USA*, 582 F.3d 1039, 1042 (9th Cir. 2009) (quoting *Abrego Abrego v. The Dow Chem. Co.*, 443 F.3d 676, 684 (9th Cir. 2006)) (quotation marks omitted); *see also Kokkonen*, 511 U.S. at 377.

jurisdiction over the present action because Plaintiff's false advertising claim arises under the Lanham Act of the United States.[29] The Court also finds that this Court has supplemental jurisdiction over Plaintiff's state claim for deceptive trade practices pursuant to 28 U.S.C. § 1367. Furthermore, this Court has general personal jurisdiction over any defendant with "continuous and systematic contacts with Nevada."[30] In the present case, this Court has personal jurisdiction over Defendants because Plaintiff has established that they all reside in Nevada, that they all have the same registered address in Nevada, and that they all have the same place of business in Nevada.[31] For these reasons, the Court finds that this Court has jurisdiction over the subject matter and the parties.

### 2. The *Eitel* factors weigh in favor of default judgment.

"In determination of whether to grant a default judgment, the trial court should consider the seven factors articulated in *Eitel*."[32] Additionally, "upon default, the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true."[33]

#### a. The first *Eitel* factor

The first *Eitel* factor is "the possibility of prejudice to the plaintiff."[34] Where a defendant "fail[s] to file a responsive pleading or answer the complaint and defend the lawsuit," the plaintiff "will suffer prejudice if default judgment is not entered because he will have no other means to litigate his claims."[35]

---

[29] 15 U.S.C. § 1125(a).

[30] *WMCV Phase 3, LLC v. Shushok & McCoy, Inc.*, 750 F. Supp. 2d 1180, 1191 (D. Nev. 2010).

[31] (*See* ECF No. 1 ¶¶ 7-10, 12.).

[32] *Liberty Ins.*, 53 F. Supp. 3d at 1317.

[33] *Heisen v. Pac. Coast Bldg. Prod., Inc.*, 26 F.3d 130 (9th Cir. 1994) (citing *Geddes v. United Fin. Group*, 559 F.2d 557, 560 (9th Cir. 1977)); *see also Garamendi* 683 F.3d at 1080.

[34] *Id*.

[35] *Howard*, 2017 WL 481456, at *3.

In the present case, Defendants have not responded, defended, or otherwise made an appearance in this action and Plaintiff will therefore suffer prejudice if default is not entered. Thus, the Court finds that the first *Eitel* factor weighs in favor of default judgment.[36]

### b. The second and third *Eitel* factors

"The second and third *Eitel* factors favor a default judgment when the 'plaintiff state[s] a claim on which the plaintiff may recover.'"[37]

#### i. *The complaint states a claim for federal false advertising*

Plaintiff's complaint alleges false advertising arising under the Lanham Act of the United States, 15 U.S.C. § 1125(a).[38] This claim requires:

(1) a false statement of fact by the defendant in a commercial advertisement about its own or another's product;

(2) the statement actually deceived or has the tendency to deceive a substantial segment of its audience;

(3) the deception is material, in that it is likely to influence the purchasing decision;

(4) the defendant caused its false statement to enter interstate commerce; and

(5) the plaintiff has been or is likely to be injured as a result of the false statement, either by direct diversion of sales from itself to defendant or by a lessening of the goodwill associated with its products.[39]

As to the first element, Plaintiff alleges that Defendants made false statements of fact in the commercial advertising of their products containing raspberry ketone ingredients.[40] For example, Defendants assert that raspberry ketones "are the most

---

[36] *See id*.

[37] *Id.* (quoting *Danning v. Lavine*, 572 F.2d 1386, 1389 (9th Cir. 1978).

[38] *See* (ECF No. 1 ¶ 1).

[39] *Skydive Arizona, Inc. v. Quattrocchi*, 673 F.3d 1105, 1110 (9th Cir. 2012).

[40] *See* (ECF No. 1 ¶¶ 5, 17-21, 24-27, 29, 33-35, 37-38).

powerful fat burners found in nature"—despite the evidence on record that "there is currently no evidence that raspberry ketone supplements can cause weight loss in humans."[41] As also alleged in the complaint, Defendants further misrepresent that raspberry ketones "burn calories even when you're sleeping," are "carb blockers & appetite suppressants," "work at the very source of metabolic ignition," "improve clarity and focus," "boost energy and endurance," "improve sleeping and relaxation," and cause "better mood."[42] According to the facts alleged in the complaint, these claims conflict with widespread scientific evidence that raspberry ketones are "of no benefit or even cause harm."[43]

As to the second and third elements, Plaintiff alleges that "RevLabs' false and misleading statements have the tendency to deceive a substantial segment of its intended audience relative to consumers' purchasing decisions for the [accused] product, at least because the evidence on record shows the tendency of this specific false advertising claim to deceive consumers."[44] Plaintiff's complaint further cites to several scientific articles warning that false claims of health benefits for raspberry ketones are among "the huge amount of misleading information distributed and propagated on the Internet," that "thousands of women around the world who are trying to lose weight are claimed to have been misled by an internet celebrity diet scam…to promote the 'Raspberry Ketone Diet.'"[45]

As to the fourth element, Plaintiff alleges that "RevLabs' [] products are offered in interstate commerce, including on the internet through marketplaces such as Amazon and Walmart."[46]

And as to the fifth element, the complaint alleges that Plaintiff was harmed by

---

[41] *See id.* ¶¶ 16-18.
[42] *Id.* ¶ 18.
[43] *See id.* ¶ 17.
[44] *Id.* ¶¶ 27, 35.
[45] *Id.* ¶¶ 16, 17 and Exs. A, F.
[46] *Id.* at 28.

Defendant's false advertising, "by lowering the public perception of the legitimate ketone products sold by Plaintiff, weakening the goodwill associated with Plaintiff and its ketone supplements, and diverting sales away from Plaintiff's ketone products."[47]

For the foregoing reasons, the Court finds that the complaint plausibly alleges each of the elements required to state a claim for federal false advertising under 15 U.S.C. § 1125(a).

### ii. *The complaint states a claim for deceptive trade practices*

In addition to federal false advertising, the complaint alleges that Defendants engaged in deceptive trade practices in violation of the Nevada Deceptive Trade Practices Act.[48] "[T]he elements of a NDTPA violation are as follows: (1) an act of consumer fraud by the defendant (2) causing plaintiff (3) damage."[49] A company harmed by its competitor's deceptive trade practices has standing to sue under the Act.[50]

"A person engages in a 'deceptive trade practice' if in the course of his or her business or occupation, he or she . . . [k]nowingly makes a false representation as to the characteristics, ingredients, uses, benefits, alterations or quantities of goods or services for sale or lease," or "[k]nowingly makes any other false representation in a transaction."[51]

As alleged in the complaint, Defendants made false representations regarding the "characteristics, uses, ingredients, [and] benefits" of its products containing raspberry ketones ingredients.[52] For example, the complaint alleges that Defendants repeatedly make false representations that raspberry ketones "are the most powerful fat burners found in nature"—despite widespread evidence that "there is currently no evidence that raspberry

---

[47] *See id.* ¶¶ 5, 20, 29, 39.

[48] Nev. Rev. Stat. § 598.0915; s*ee* (ECF No. 1 ¶ 1).

[49] *Simon v. Bank of Am. N.A.*, No. 10-CV-00300-GMN-LRL, 2010 WL 2609436, at *8 (D. Nev. June 23, 2010).

[50] *See Switch, Ltd. v. Uptime Inst., LLC*, 426 F. Supp. 3d 636, 645 (D. Nev. 2019) (finding actionable deceptive trade practices between competitors).

[51] Nev. Rev. Stat. § 598.0915(5), (15).

[52] *See* (ECF No. 1 at ¶¶ 5, 17-21, 24-27, 29, 33-35, 37-38).

ketone supplements can cause weight loss in humans."[53] Plaintiff asserts that these claims conflict with widespread scientific evidence, including evidence on record, that raspberry ketones are "of no benefit or even cause harm."[54]

As also alleged in the complaint, Defendants make these false representations knowingly and willfully, because they make them despite the widespread industry knowledge that raspberry ketones do not have any health benefits.[55]

As stated elsewhere in the complaint, Plaintiff was harmed by Defendant's false misrepresentations, "by lowering the public perception of the legitimate ketone products sold by Plaintiff, weakening the goodwill associated with Plaintiff and its ketone supplements, and diverting sales away from Plaintiff's ketone products."[56]

Because the complaint alleges that Defendants knowingly made false representations concerning the "characteristics, uses, ingredients, and benefits" of its products, and that Plaintiff was harmed by Defendants' misrepresentations, the Court finds that Plaintiff has stated a claim under Nev. Rev. Stat. § 598.0915 (2013).[57]

Because Plaintiff stated a claim for each of the two causes of action in its complaint, the Court finds that the second and third *Eitel* factors weigh in favor of default judgment.[58]

---

[53] *See id.* at ¶¶ 16-18.
[54] *See id.* at ¶ 17.
[55] *See* (ECF No. 1 at ¶¶ 2, 3, 5, 10, 16-21, 24-27, 33-35, 37, 38).
[56] *See id.* at ¶¶ 5, 20, 29, 39.
[57] *Id.* ¶¶ 37, 39.
[58] *See Liberty Ins.*, 53 F. Supp. 3d at 1318; *see also Howard*, 2017 WL 481456, at *3.

   **c.**  **The fourth *Eitel* factor**

Under the fourth *Eitel* factor, the Court considers "the sum of money at stake in the action."[59] In the present matter, discovery is needed to ascertain the amount of money at stake.[60] As damages remain uncertain, the Court finds that this *Eitel* factor is neutral.[61]

   **d.**  **The fifth *Eitel* factor**

The fifth *Eitel* factor considers "the possibility of a dispute concerning material facts."[62] Where default has already been entered, this factor "favors default judgment" because "the complaint is taken as true."[63] In the present case, the clerk already entered default against Defendants,[64] and thus the factual allegations of the complaint must be taken as true, and the Court holds that this factor favors default judgment.[65]

   **e.**  **The sixth *Eitel* factor**

The sixth *Eitel* factor considers whether a defendant's default was due to excusable neglect.[66] One example of excusable neglect is "the inadvertent failure of a secretary to notify an attorney of a deadline."[67] However, there is no excusable neglect where the

---

[59] 782 F.2d at 1471.

[60] *See Sugarfina, Inc. v. Sweitzer LLC*, No. 2:17-CV-07950-ODW-JCX, 2018 WL 6265074, at *7 (C.D. Cal. Mar. 8, 2018) (in a false advertising case, granting default judgement as to liability and leave to conduct damages discovery because "no amount is currently [] calculable" where "plaintiff has not been able to obtain necessary discovery" due to "Defendants' failure to respond or appear").

[61] *See id.* (finding that "this factor is currently neutral" in a false advertising case where defendants are in default and damages are therefore not calculable); *see also Howard*, 2017 WL 481456, at *3 (granting default judgment as to liability only and finding that "this fourth *Eitel* factor can be examined further" when ruling on damages).

[62] 782 F.2d at 1471–72.

[63] *Liberty Ins.*, 53 F. Supp. 3d at 1318 (finding that by failing to respond, defendant "is deemed to have admitted the truth of plaintiff's averments"); *see also Garamendi,* 683 F.3d at 1080 (9th Cir. 2012) ("[The general rule of law is that upon default the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true.").

[64] (ECF No. 16).

[65] *See Liberty Ins.*, 53 F. Supp. 3d at 1318; *see also Howard*, 2017 WL 481456, at *4.

[66] 782 F.2d at 1472.

[67] *Fouchia v. Carlota Copper Co.*, No. CV 11-00374-PHX-NVW, 2012 WL 2072673, at *3 (D. Ariz. June 8, 2012).

defendants are "properly served with summons and the complaint" and there is no other evidence to support excusable neglect.[68]

Because Defendants were properly served with summonses and the complaint,[69] and there is no other evidence of excusable neglect, the Court holds that this factor weighs in favor of default judgment.[70]

### f. The seventh *Eitel* factor

The seventh *Eitel* factor takes into consideration that "[c]ases should be decided upon their merits whenever reasonably possible."[71] However, "the mere existence of Rule 55(b) 'indicates that this preference, standing alone, is not dispositive.'"[72] Indeed, a defendant's "failure to answer or otherwise respond to the complaint 'makes a decision on the merits impractical, if not impossible.'"[73] Thus, "[u]nder these circumstances, default judgment . . . is warranted."[74] Here, the Court finds that the seventh *Eitel* factor weighs in favor of default judgment because Defendants have failed to respond to the complaint.[75]

Considered as a whole, the Court finds that the *Eitel* factors strongly favor default judgment in this case.

## B. Post-judgment damages discovery

In addition to partial default judgment as to liability, Plaintiff also moves for damages discovery regarding Defendants' (1) sale of raspberry ketone products and related

---

[68] *Liberty Ins.*, 53 F. Supp. 3d at 1318 (finding no excusable neglect where defendant was properly served, even though he was incarcerated); *Howard*, 2017 WL 481456, at *4 (finding no excusable neglect where defendant was "properly served . . . with the summons and the complaint but failed to respond" and "still [had] not appeared in this case").

[69] *See* (ECF Nos. 4, 4-1, 4-2, 16.)

[70] *See id.*

[71] 782 F.2d at 1472.

[72] *Liberty Ins.*, 53 F. Supp. 3d at 1318 (quoting *PepsiCo, Inc. v. California Sec. Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002)).

[73] *Id.*; *see also Howard*, 2017 WL 481456, at *4 (same).

[74] *Id.*

[75] *See id.*

financial data, (2) advertising for raspberry ketone products, and (3) decision to falsely advertise the benefits of its raspberry ketone products.[76] "Plaintiffs have an affirmative duty to prove any damages they seek, even at the default-judgment stage."[77] However, it is not possible to calculate accurate false advertising damages where "plaintiff has not been able to obtain necessary discovery" due to "Defendants' failure to respond or appear."[78]

In a false advertising case, a successful plaintiff may recover "(1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action" as well as "reasonable attorneys fees."[79] The Court has discretion to further award punitive damages for a "sum above the amount found as actual damages, not exceeding three times such amount."[80] A plaintiff may also be entitled to injunctive relief.[81] Under the Nevada Deceptive Trade Practices Act, a successful plaintiff is entitled to actual damages (i.e. damages necessary "to restore any person in interest any money or property, real or personal, which may have been acquired by means of any deceptive trade practice which violates any of the provisions") and injunctive relief.[82] Plaintiff is seeking injunctive relief and up to three times its actual damages and/or an award of Defendants' profits, as well as costs and reasonable attorney fees.[83]

The Court finds that discovery regarding Defendants' sale of raspberry ketone products and related financial data, advertising data for raspberry ketone products, and decision to falsely advertise the benefits of raspberry ketones, is necessary so that Plaintiff can calculate the actual damages caused by Defendants' false advertising and deceptive

---

[76] (ECF No. 19).

[77] *Thorndike, Inc. v. Harkins*, No. 2:16-CV-02488-JAD-VCF, 2017 WL 3367112, at *1 (D. Nev. Aug. 4, 2017).

[78] *Sugarfina,* 2018 WL 6265074, at *7.

[79] 15 U.S.C. 1117(a).

[80] *Id.*

[81] *See id.* § 1116(a).

[82] *See* Nev. Rev. Stat. §§ 598.099, 598.0993 (2013).

[83] (ECF No. 1 ¶ 30).

trade practices, determine the extent of Defendants' profits associated with the false advertising and deceptive trade practices, and obtain additional evidence of willfulness. For these reasons, the Court grants Plaintiff leave to conduct the foregoing post-judgment damages discovery from Defendants and their current or former officers, employees, contractors, affiliates, assigns, and/or successors, and any third-party manufacturers, distributors, promoters, retailers, and/or customers of Defendants' raspberry ketone products. **Plaintiff's post-judgment discovery is limited to the proposed discovery requests filed on the docket at ECF No. 22.**

## CONCLUSION

Having reviewed Plaintiff's Motion, and good cause appearing, the requested relief is appropriate given the evidence presented by the Plaintiff, the sufficiency of the proceedings in this action, and the failure of any person or entity to assert otherwise. As such, partial default judgment and post-judgment discovery is appropriate.

IT IS THEREFORE ORDERED that Plaintiff's motion for partial default judgment [ECF No. 18] is GRANTED as to liability only. The Clerk of Court is **directed to ENTER PARTIAL JUDGMENT ACCORDINGLY**.

IT IS FURTHER ORDERED that Plaintiff's motion for post-judgment discovery **[ECF No. 19] is GRANTED.** Plaintiff may expound post-judgment discovery consistent with that filed on the docket at ECF No. 22.

IT IS FURTHER ORDERED that **Plaintiff must file its ultimate motion for entry of final judgment by November 22, 2024.**

_____
U.S. District Judge Jennifer A. Dorsey
Dated: July 22, 2024